UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ALICIA UTTER,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　Defendant. | Case No. 3:23-cv-00441-MMD-CLB<br><br>BENCH ORDER |

**I.    SUMMARY**

Plaintiff Alicia Utter sued Defendant the United States of America for negligence under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 1402(b), 2401(b), 2402, 2671-2680 ("FTCA") following an automobile accident between her and Amor Cabral ("Cabral"), who was driving a United States Postal Service ("USPS") delivery truck at the time. (ECF No. 1.) The Court held the first phase of a bifurcated bench trial on liability on April 8, 2025 (the "Trial"). (ECF Nos. 27, 28 (setting Trial), 39 (Trial minutes), 40 (Trial transcript).) The Court now makes the following findings of fact and conclusions of law following the Trial. As further explained below, the Court finds that Plaintiff did not establish Defendant's liability on her single negligence claim because she did not show by a preponderance of the evidence that Cabral T-boned her, as she contended. (ECF Nos. 31, 32 (Plaintiff's proposed findings and trial brief contending as such).)[1] Instead, the evidence presented at Trial showed she backed into Cabral, as Defendant contended. (ECF Nos. 34, 35

---

[1] The Court directed the parties to file revised proposed findings of fact and conclusions of law citing the Trial transcript at the conclusion of the Trial. (ECF No. 39.) The parties did. (ECF Nos. 41, 42.) The Court used the parties' proposed findings to prepare this order.

(Defendants' proposed findings and trial brief contending as such).) The Court will accordingly direct judgment in Defendant's favor.

## II.   FINDINGS OF FACT

The Court makes the following findings of fact based on the testimony and other evidence admitted during the Trial,[2] along with the trial briefing the parties filed in this case. (ECF Nos. 29-36, 41-42.) The parties stipulated to the first two factual findings. (ECF Nos. 37, 38 (granting stipulation).)

1. Plaintiff and Cabral were involved in a motor vehicle accident on August 9, 2021.

2. At the time of the accident, Cabral was acting in the course and scope of his duties as a USPS employee.

3. At the time of the accident, Plaintiff lived with her parents at 2860 Pinenut Court, Reno, Nevada 89509, which is at the base of a cul-de-sac, and the cul-de-sac sits at the base of a slope that rises upwards. (Ex. 2 at 7; *see also* ECF No. 42 at 2.)

4. Plaintiff's car was parked perpendicular to the curb on the street outside her parents' house, with its nose up against the sidewalk and in front of the mailbox for 2860 Pinenut Court.[3] (*Id.*; *see also* Ex. 5 at 7; ECF No. 40 at 8.)

5. Plaintiff saw Cabral in his mail delivery vehicle about fifteen feet off to her right as she got into the car and started it up. (ECF No. 40 at 8.)

6. Plaintiff testified that she looked around to make sure there was no one behind her before backing up. Plaintiff started backing up, when she heard a loud noise and realized she had collided with Cabral's mail delivery vehicle. (*Id.*; *see also id.* at 14.)

---

[2]Plaintiff submitted exhibits numbered 1-61. (ECF No. 29.) Defendant submitted exhibits numbered 500-533. (ECF No. 33.) "Ex." in this order refers to an exhibit admitted at Trial.

[3]She admitted at trial that the way she parked obstructed the mailbox, but the Court does not need to—and thus does not—resolve any disputes about whether she was parked legally. The fact was she was parked this way at the pertinent time.

2

7. Cabral testified that he was trying to avoid Plaintiff's car—which he thought was parked—by going around it when Plaintiff backed into his mail delivery vehicle. Going straight was not an option because she was parked in front of her mailbox. (*Id.* at 140:11-14, 146:17-18, 168:1-8, 171-72, 195:1-2.)

8. Cabral testified that this was a low-speed impact between the two vehicles. (*Id.* at 169:6-8.)

9. Plaintiff similarly testified that both vehicles were travelling less than 5 mph before the accident occurred. (*Id.* at 26:13-15, 27:3-7.)

10. The airbags in Plaintiff's vehicle did not deploy. (*Id.* at 123:16-25.)

11. Cabral testified that he was observant at the time of the accident. (*Id.* at 165:22-25.)

12. Cabral further testified that he was not distracted in any way before the accident took place—he was not playing loud music, he did not have earbuds in, he was not on his phone, and he was not looking down at the mail. (*Id.* at 169:9-12, 17-20; *see also id.* at 21:18-25.)

13. Both vehicles were drivable after the accident. (*Id.* at 79:23-80:15.)

14. Law enforcement was not called to the scene of the accident. (*Id.* at 78-79.)

15. Cabral was not cited for any violation by law enforcement. (*Id.* at 161:4-6, 185:3-5.)

16. Cabral was not disciplined for this accident. (*Id.* at 166:3-9.)

17. In addition, following an investigation, USPS found that the "[c]ustomer (Utter) backed into LLV while carrier was passing." (Ex. 508 at 9-10.) Thus, Cabral was not found in any way responsible or at fault for the accident by the USPS. (ECF No. 40 at 161:4-6; Ex. 511 (Accident Investigation Worksheet, PS 1700); Ex. 512 (MVA Report, SF 91).)

18. The USPS made a claim against Plaintiff in the amount of $56.92 for the cost of damage to the USPS truck's fender. (Ex. 508 at 9.)

19. After the accident happened, Cabral called Robert Hamm, his supervisor, to come to the scene, as per USPS protocol. (ECF No. 40 at 128:2-12.)

20. Upon arrival, Hamm discovered the vehicles were touching corner fender to corner fender. (*Id.* at 211:21-24; *see also* Ex. 2 at 4.)

21. Pictures were taken at the scene and admitted during the Trial.

22. Some of the pictures show that the two vehicles came to a rest without showing any metal-on-metal contact between them. (Ex. 506 at 4, 5, 6; *see also* Ex. 532.)

23. Plaintiff testified that the scratch on her passenger door visible in some of the pictures, along with the dent in her passenger door, were property damage that preexisted the date of this accident. (ECF No. 40 at 92:1-9.)

24. The photographic evidence demonstrates that Plaintiff's wheel was on top of the USPS truck's bumper, looking to have peeled back and off a significant portion of the USPS truck's bumper. (Ex. 506 at 5.)

25. The photographic evidence further shows scratches and scrapes into the pavement caused by the bumper piece that was ripped off by Plaintiff's wheel and because Plaintiff continued to move backwards after contact. (*Id.* at 8-9; *see also* Ex. 528.)

26. Cabral explained that the damage to the pavement on the cul-de-sac was caused by a piece that was ripped off the USPS mail truck that was scraping on the ground as Plaintiff continued to back up after contacting Cabral. (ECF No. 40 at 190:22-191:17.)

27. The photographic evidence shows at least a wheel length of scraping on the pavement. (Exs. 524, 528, 531 (bottom photo).)

28. The photographic evidence does not demonstrate, as Plaintiff claims, that the USPS truck hit the side of her car, nor does the photographic evidence demonstrate skid marks. (Exs. 1, 2.)

29. Instead, the photographic evidence shows that Plaintiff's vehicle was not T-boned by Cabral.

///

30. As noted, the evidence shows a scuff mark in the direction Plaintiff was backing up, not the direction in which she claims she was struck by Cabral. (Ex. 524.)

31. Moreover, there is no photographic evidence that corroborates or suggests that Plaintiff's vehicle 'skidded back,' as she testified to. (ECF No. 40 at 17:7-17.)

32. And Cabral testified that after contact and being clipped by Plaintiff, she continued to back up before coming to a stop. (*Id.* at 172:3-17.)

33. Hamm recalls that Plaintiff may have described the event as a T-bone, but his understanding from the manner the vehicles were configured, was that this was not a T-bone accident. (ECF No. 34-4 at 18; *see also* ECF No. 40 at 202 (saying that Plaintiff told him she was T-boned).)

34. Plaintiff did admit that prior to her backing out, her vehicle was parked nose to the curb, and thus she was blocking the mailbox. (*Id.* at 6:13-15.)

35. Plaintiff also admitted that she has a responsibility as a driver to watch where she is going when she is backing up to ensure she does not hit anybody. (*Id.* at 49:1-5.)

36. Plaintiff additionally explained that the vehicle she was driving did not have any sensors to identify cars behind her or to her sides when the accident occurred. (*Id.* 48:9-12.)

37. Cabral testified he did not T-bone Plaintiff. (*Id.* at 185:8.)

38. The Court finds that Cabral did not T-bone Plaintiff.

39. Instead, for all the reasons described above, the Court finds that Plaintiff backed into Cabral.

40. However, even post-trial, Plaintiff continues to rely on a witness statement Cabral authored after the accident to argue that Cabral was at fault. (ECF No. 42 at 4.) In that statement, Cabral wrote that, prior to the collision, he "…was doing my deliver on Pinenut Ct." (Ex. 513.) "Upon completion of my delivery on house number 2830 I went on to proceed delivery onto the next address which was 2860, 2875." (*Id.*) Cabral also wrote that prior to the collision with Plaintiff, "I have noticed a vehicle parked head in on the cul

1 de sac in front of 2860." (*Id.*) Cabral further wrote that "I tried to avoid said vehicle to
2 complete my delivery but didn't realized [sic] the vehicle was backing up…." (*Id.*)

3       41.    But this statement is consistent with Cabral's trial testimony that he thought
4 Plaintiff was parked, and Cabral was trying to drive around her, at the moment of impact.
5 (ECF No. 40 at 140:11-14, 146:17-18, 168:1-8, 171:25-172:4, 195:1-2.)

6       42.    Cabral also testified that he was not saying, in this written statement, that he
7 was negligent, or the accident was his fault. (*Id.* at 173:15-174:15.)

8       43.    The Court accordingly finds that Cabral's written statement prepared after
9 the accident does not establish his fault, particularly in view of the photographic evidence
10 described above.

11       44.    Moreover, at Trial, the parties continued to present competing narratives as
12 to who was at fault, which essentially requires the Court to resolve a credibility conflict
13 between Cabral and Plaintiff.

14       45.    The Court finds Cabral generally credible because his testimony was both
15 internally consistent and consistent with the photographic and other evidence before the
16 Court.

17       46.    For example, as noted above, Cabral's testimony at Trial was consistent with
18 what he wrote in the written statement he prepared after the accident—that he thought
19 Plaintiff was parked, so was trying to drive around her because she was blocking the
20 mailbox, when she backed into him. (*Compare* Ex. 513 *with* ECF No. 40 at 168:1-8,
21 171:25-172:4, 195:1-2.)

22       47.    As also described above, the photographic evidence is consistent with
23 Cabral's account of what happened, and not Plaintiff's.

24       48.    Plaintiff also admitted that Cabral never accepted blame for causing this
25 accident. (ECF No. 40 at 77:8-14.)

26 ///
27 ///
28

49. In contrast, the Court does not find Plaintiff credible. Her lack of credibility is illustrated by a variety of contradictions in her testimony. The Court provides some examples below.

50. First, Plaintiff admitted at Trial that during her deposition, she initially denied being in a subsequent car accident to the one on August 9, 2021, but later admitted that she had rear-ended someone in the summer of 2022 while driving her father's Chevy Tahoe. (*Id.* at 24:15-25:19.) She stated that she did not mention it because she did not think it was a significant enough accident. (*Id.* at 25:20-25.)

51. Second, Plaintiff gave some slightly conflicting testimony about how far she backed out before any contact. Specifically, she wrote 18 feet in a written statement, then 15 feet in the self-report online she filed with the Reno Police Department about the accident, and then 5 to 10 feet in her deposition. (*Id.* at 70:1-25.)

52. Third, Plaintiff testified that she submitted a police report online the day of the accident, despite the online police report being submitted at 8:26 pm on August 10, 2021, more than 24 hours after the accident. (*Id.* at 33:24-34:4, 60:1-11; Ex. 509 at 2.)

53. Fourth, in this police report Plaintiff submitted online, she claimed that "Cabral left the scene." (*Id.* at 4.) To the contrary, Cabral did not "leave the scene" but, as per USPS protocol, provided a statement to the supervisor, and then a separate postal worker drove Cabral back to the postal station. (ECF No. 40 at 162:1-5, 184:2-6, 225:9-10.)

54. Fifth, Plaintiff claimed that the Postal Service employees did not take any photographs when they came out to the scene. (*Id.* at 20:21-23.) Plaintiff also stated that Hamm, the supervisor who came out to the scene, did not ask for a statement from her, and that she did it voluntarily. (*Id.* at 71:13-72:5.)

55. But contrary to Plaintiff's claims, Hamm took photographs at the scene and asked the parties, both Plaintiff and Cabral, to provide him with statements. (*Id.* at 206:20-207:5.)

56. And despite the fact the written statements of both Cabral and Plaintiff originated from and were part of the USPS investigation, Plaintiff claimed at Trial that Hamm did not collect the statements at the scene. (*Id.* at 72:10-15.)

57. Sixth, despite Plaintiff's insistence at Trial that there were skid marks showing her vehicle was thrown backwards by the accident, the photographic evidence shows no skid marks or tire marks demonstrating that her vehicle was moved by Cabral. (Exs. 506, 521, 522, 523.)

58. Seventh, while Plaintiff alleged in her Complaint that her car suffered some $1300 of property damage (ECF No. 1 at 3), she admitted at Trial that she never took her car into a shop for an estimate or had it repaired (ECF No. 40 at 81:6-13).

59. In sum, the Court does not find Plaintiff credible. And as noted, the Court finds Cabral credible.

60. For all these reasons, the Court finds that Plaintiff backed into Cabral. Cabral did not cause the accident.

### III.   CONCLUSIONS OF LAW

1. The Court has subject matter jurisdiction over Plaintiff's negligence claim against Defendant under the FTCA.

2. Subject to certain exceptions and conditions, the FTCA waives the United States' sovereign immunity such that the United States may be held liable for the negligence of its employees in the same manner and to the same extent as a private individual under like circumstances, according to the law of the state where the act or omission occurred. *See Louie v. United States*, 776 F.2d 819, 824 (9th Cir. 1985); 28 U.S.C. §§ 1346(b)(1), 2674.

3. Nevada law applies to Plaintiff's negligence claim.

4. "Nevada law requires plaintiffs to establish negligence by a preponderance of the evidence." *Littlejohn v. United States*, 321 F.3d 915, 924 (9th Cir. 2003) (citing *Perez v. Las Vegas Med. Ctr.*, 805 P.2d 589, 591 (Nev. 1991)).

5.　　In Nevada, "to prevail on a negligence claim, a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009) (citation omitted).

6.　　The Nevada Supreme Court has explained that vehicle drivers "are under a twofold duty" that includes both compliance with traffic laws and to "exercise the care of the ordinarily prudent person under the circumstances." *Johns v. McAteer*, 457 P.2d 212, 215 (Nev. 1969); *see also Glover-Armont v. Cargile*, 426 P.3d 45, 56 (Nev. App. 2018) (finding that even police officers have a "duty to drive with due regard of the public's safety").

7.　　Nevada is a comparative negligence jurisdiction. *See* NRS § 41.141. Under this system, if a defendant asserts comparative negligence as a defense, negligence on the part of a plaintiff "does not bar a recovery if that negligence was not greater than the negligence or gross negligence of the parties to the action against whom recovery is sought." *Id.* at § 41.141(1); *Cafe Moda v. Palma*, 272 P.3d 137, 139 (Nev. 2012). Accordingly, if a plaintiff is more at fault than the defendant, then that plaintiff is barred from recovery. And, if the plaintiff is not barred from recovery, each party is responsible for its percentage of fault. *See* NRS § 41.141(2)(b)(2) ("If the jury determines the plaintiff is entitled to recover, it shall return . . . A special verdict indicating the percentage of negligence actionable to each party remaining in the action.").

8.　　Consistent with the Court's Findings of Fact above, Plaintiff has failed to prove by a preponderance of evidence that Cabral was at fault for the accident.

9.　　Instead, Plaintiff caused the accident by backing into Cabral.

10.　　Cabral was not contributorily negligent.

11.　　Because Plaintiff has failed to prove that Cabral was at fault for the accident, this Court finds that the USPS was not negligent as to the August 9, 2021, car accident. And accordingly, Defendant is entitled to judgment in its favor.

**IV.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court reviewed these arguments and cases and determines that they do not warrant discussion as they do not materially affect the outcome of this case.

It is therefore ordered that Plaintiff failed to establish liability on her single claim for negligence.

The Clerk of Court is directed to enter judgment in Defendant's favor and close this case.

DATED THIS 22nd Day of May 2025.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE